UNITED STATES of America,
Plaintiff–Appellee,

v.

Tony E. COLLINS, Defendant–Appellant.

No. 94–30300.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 2, 1995.

Decided July 24, 1995.

Michael Donahoe, Asst. Federal Defender, Helena, MT, for defendant-appellant Collins.

Kris A. McLean, Asst. U.S. Atty., Helena, MT, for plaintiff-appellee U.S.

Before: SKOPIL, BOOCHEVER, and THOMPSON, Circuit Judges.

SKOPIL, Senior Circuit Judge:

Tony E. Collins was convicted by a jury of violating 18 U.S.C. §§ 922(g)(1) and 922(g)(2), prohibiting felons and fugitives from possessing firearms. He was sentenced as an armed career criminal pursuant to 18 U.S.C. § 924(e)(1). He contends on appeal that his prior felony convictions cannot serve as predicate offenses for sections 922(g)(1) and 924(e) because his civil rights, including the right to possess firearms, had been restored. We disagree that his right to possess firearms was ever restored. We also reject Collins' arguments regarding the search warrant and supporting affidavit, his proffered entrapment defense, the sufficiency of the evidence that he was a fugitive from justice, and acceptance of responsibility. We affirm.

## FACTS AND PRIOR HISTORY

Collins was convicted of several felonies in Illinois in the late 1970's for which he was sentenced and released. He was arrested in Illinois in 1991, on misdemeanor theft charges. A bench warrant was issued when he failed to appear for trial. Collins thereafter moved to Montana. On June 15, 1993, he was stopped by a Montana sheriff after reports that he had fired a gun in a bar. Firearms were found in Collins' possession. The sheriff learned of the outstanding arrest warrant, but nevertheless released Collins and returned his firearms when it appeared that Illinois would not extradite Collins, and that the complaining witness would not sign a complaint.

The Bureau of Alcohol, Tobacco, and Firearms (ATF) was notified of the shooting incident. ATF learned of Collins' prior felony convictions, and confirmed his identity. On February 25, 1994, ATF was informed by a "concerned citizen" that on January 15, 1994, Collins had firearms in his trailer. The "concerned citizen," an acquaintance of Collins, provided Collins' address. ATF agents obtained a search warrant for Collins' trailer, where they found firearms and ammunition. Collins, however, was in Illinois on the day of the search. When Illinois police went to Collins' father's house to execute an arrest warrant, Collins initially concealed himself, but eventually submitted to arrest.

Collins was convicted by a jury of violating 18 U.S.C. §§ 922(g)(1) and 922(g)(2). He appeals his conviction and sentence.

## DISCUSSION

1. *Restoration of Civil Rights*

18 U.S.C. § 922(g)(1) makes it "unlawful for any person who ... has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year to ... possess in or affecting commerce, any firearm or ammunition."

What constitutes a conviction of [a crime punishable by imprisonment for a term exceeding one year] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction ... for which a person ... *has had civil rights restored* shall not be considered a conviction for purposes of this chapter, *unless such ... restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.*

18 U.S.C. § 921(a)(20) (emphasis added). Thus, if a felon's civil rights have been restored, "his felony conviction may not serve as a predicate conviction for a violation of section 922(g)(1), unless he has been informed by the state statute or other state action of any prohibition concerning firearms." *United States v. Cardwell*, 967 F.2d 1349, 1350 (9th Cir.1992).

Collins was sentenced pursuant to 18 U.S.C. § 924(e)(1), which provides:

[i]n the case of a person who violates section 922(g) of this Title and has three previous convictions by any court referred to in section 922(g)(1) of this Title for a violent felony or serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years.

18 U.S.C. § 924(e)(1). For section 924(e) to apply, the defendant's convictions must be of the type specified in section 922(g)(1), which, as stated above, refers to section 921(a)(20). Section 924(e) thus incorporates the definition of "crime punishable by imprisonment for a term exceeding one year," found in section 921(a)(20), and its exclusion of any conviction for which the defendant's civil rights have been restored.

■ Collins argues that his Illinois felony convictions are not "convictions" within the meaning of section 921(a)(20), because Montana restored his civil rights. The district court rejected that argument, ruling that Illinois law, rather than Montana law, was determinative, and that his civil rights had not been restored by Illinois law. We agree that Illinois law applies. "For purposes of § 921(a)(20), only the convicting state jurisdiction can restore civil rights to a convicted felon and remove the disability of a predicate state offense." *United States v. Eaton*, 31 F.3d 789, 792 (9th Cir.1994); *see also Beecham v. United States*, — U.S. —, 114 S.Ct. 1669, 1671, 128 L.Ed.2d 383 (1994) (law of the convicting jurisdiction governs restoration of rights). Thus, we must consider the effect of Illinois law on Collins' prior felony convictions.

■ Our analysis is set forth in *United States v. Dahms*, 938 F.2d 131, 133 (9th Cir.1991). First, we must determine whether Collins' civil rights were substantially restored by Illinois law. Such restoration may occur by operation of law, and must be substantial, although it need not be complete. *See United States v. Gomez*, 911 F.2d 219, 221 (9th Cir.1990). When Collins was released from prison in 1979, his rights to vote and hold office, as well as all "license rights and privileges," were restored by operation of law. Ill.Rev.Stat. ch. 38, para. 1005-5-5 (1979). This statute "substantially restored" Collins' civil rights. *See Gomez*, 911 F.2d at 220-21 (civil rights "substantially restored" for purposes of section 921(a)(20) when rights to vote and serve on jury restored, despite remaining limitations on other rights); *United States v. Erwin*, 902 F.2d 510, 512 (7th Cir.) (¶ 1005-5-5 substantially restores civil rights), *cert. denied*, 498 U.S. 859, 111 S.Ct. 161, 112 L.Ed.2d 127 (1900).

■ Second, we must determine whether state law expressly prohibited Collins from possessing firearms, notwithstanding the substantial restoration of his civil rights. *See Dahms*, 938 F.2d at 133. We look to state law at the time restoration is granted, without regard to whether Collins' civil rights were later limited or expanded. *See United States v. Varela*, 993 F.2d 686, 690 & n. 2 (9th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 232, 126 L.Ed.2d 186 (1993); *Cardwell*, 967 F.2d at 1350-51. We conclude that Illinois law expressly prohibited Collins from possessing a firearm. *See United States v. Gipson*, 985 F.2d 412, 414 (8th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 81, 126 L.Ed.2d 50 (1993); *Erwin*, 902 F.2d at 512-513. Upon his release from prison, Collins

was prohibited from possessing firearms for five years. Ill.Rev.Stat. ch. 38, para. 24–3.1(a)(3) (1979); *see Erwin*, 902 F.2d at 512–513. Before five years had elapsed, Collins was reincarcerated for subsequent crimes. Collins remained incarcerated in 1984, when Illinois law changed to prohibit all felons from possessing firearms at any time, in the absence of special permission from the Director of State Police. Ill.Rev.Stat. ch. 720, para. 5/24–1.1 (1995) (effective July 1, 1984).

Collins argues that his right to possess firearms was restored in 1984, notwithstanding his incarceration. In *United States v. Clark*, 993 F.2d 402, 404–405 (4th Cir.1993), the Fourth Circuit considered whether, for purposes of section 921(a)(20), a felon's right to possess firearms is restored when the felon never actually became eligible to possess firearms under the state law due to subsequent convictions. The court held that section 921(a)(20) requires "*effective*, not merely formal, restoration of rights to render a prior conviction unavailable for consideration under § 924(e)." *Id.* at 405 (emphasis in original). We agree with the Fourth Circuit that it "would undermine the entire purpose of § 924(e), designed to respond to recidivist conduct, to isolate each offense and project what would have happened in the absence of other offenses." *Id.* This reasoning applies with equal force to section 922(g)(1). Thus, we conclude that Collins' right to possess firearms has never been restored by Illinois law. Accordingly, his prior felony convictions were properly used as predicate offenses for sections 922(g)(1) and 924(e).

Contrary to Collins' assertion, consideration of the amended statute in determining whether he could lawfully possess firearms is not in conflict with *Cardwell*. In *Cardwell*, we considered whether section 921(a)(20) refers to the state of the law at the time of the offense for which defendant is currently being prosecuted, or at the time of the restoration. We held that the plain meaning of "expressly provides" in section 921(a)(20) requires the court to determine what rights exist at the time restoration is granted, and not at the time of the later offense. 967 F.2d at 1350. *Cardwell*, therefore, merely estab-

lishes that once a felon's rights have been restored for a particular offense, later changes in state law are irrelevant for purposes of section 921(a)(20). Here, we simply add that a felon's rights must be effectively restored to be excluded from the definition of "conviction" in section 921(a)(20).

■ We disagree with Collins that consideration of the amended statute violates the ex post facto clause. The Illinois Court of Appeals rejected this argument in *People v. McCrimmon*, 150 Ill.App.3d 112, 103 Ill.Dec. 313, 315–16, 501 N.E.2d 334, 336–37 (1986). Moreover, we have rejected an ex post facto challenge to an analogous Oregon law. *United States v. Huss*, 7 F.3d 1444, 1447–48 (9th Cir.1993). In *Huss*, we reasoned that the new law does not constitute punishment because the statute's purpose and effect was regulatory rather than punitive. *Id.* The 1984 amendment to the Illinois firearm laws is a part of a larger statutory scheme designed to regulate the possession of firearms. *See* Ill.Rev.Stat. ch. 720, paras. 5/24–1.1, 5/24–3.1; Ill.Rev.Stat. ch. 430, para. 65/10. The new law does not constitute punishment, and thus, does not violate the ex post facto clause. *See id.* at 1448.

■ Likewise, we reject Collins' claim that section 922(g)(1) violates the equal protection guarantee of the Fifth Amendment by relying on non-uniform state laws to determine whether a felon's civil rights are restored. His argument must fail, as we rejected the same challenge to former 18 U.S.C. § 1202(a), the predecessor to section 922(g)(1), which also relied upon state law in defining the offense. *United States v. Houston*, 547 F.2d 104, 107 (9th Cir.1976) (per curiam).

■ Finally, we reject Collins' claims that section 922(g)(1) exceeds Congress' authority under the commerce clause and violates the Tenth Amendment, because the statute encroaches upon the authority of Montana to decide who shall possess firearms, and what effect to give felony convictions from other states. In *United States v. Hanna*, 55 F.3d 1456 (9th Cir.1995), we rejected a commerce clause challenge to section 922(g)(1). Id. at 1462 (citing *United States v. Lopez*, —— U.S.

——, ——, 115 S.Ct. 1624, 1625, 131 L.Ed.2d 626 (1995)). Because the statute is a valid exercise of Congress' commerce authority, we conclude that the statute does not violate the Tenth Amendment. *See Columbia River Gorge United—Protecting People and Property v. Yeutter,* 960 F.2d 110, 114 (9th Cir.) (statute does not violate the Tenth Amendment when it does not violate the commerce clause), *cert. denied,* —— U.S. ——, 113 S.Ct. 184, 121 L.Ed.2d 128 (1992).

### 2. *Search Warrant*

 Collins argues that he was entitled to a *Franks* hearing because the affidavit supporting the search warrant omitted the fact that the sheriff saw Collins in possession of firearms on June 25, 1993, and instead implies that this occurred on February 4, 1994, shortly before the warrant was issued. *See Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). To be entitled to a *Franks* hearing, Collins had to make a substantial preliminary showing that the affidavit contains deliberate or reckless omissions of facts that tend to mislead, and demonstrate that the affidavit supplemented by the omissions would not be sufficient to support a finding of probable cause. *United States v. Kyllo,* 37 F.3d 526, 529 (9th Cir. 1994). His bare assertion that the omission of the June date was deliberate "because the [ATF] agents knew the truth and failed to include it in the warrant application," does not establish that the omission was the result of anything other than negligence or innocent mistake. *See United States v. Miller,* 753 F.2d 1475, 1478 (9th Cir.1985) (allegations of negligence or innocent mistake are insufficient to warrant a *Franks* hearing). Accordingly, we conclude that the district court properly denied Collins' motion for a *Franks* hearing.

 Collins also argues that the search warrant was not supported by probable cause. Probable cause to support a search warrant requires only that the magistrate judge find that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Mendonsa,* 989 F.2d 366, 368 (9th Cir.1993) (quotation omitted). Here, the affidavit revealed that during an earlier police investigation, Collins admitted to police that he possessed firearms. The police investigation disclosed that Collins had numerous felony convictions and that there were two outstanding warrants for his arrest. Moreover, an acquaintance of Collins, whom the police found reliable, reported that firearms were in Collins' residence approximately six weeks before the affidavit was signed by the affiant. The tip was based on personal observation, and was corroborated in part by Collins' earlier admission that he owned firearms. We conclude that the magistrate judge's finding of probable cause was not clearly erroneous. *See United States v. Pitts,* 6 F.3d 1366, 1369 (9th Cir.1993).

 We also reject Collins' argument that information that he possessed firearms on June 25, 1993 is too stale to support a finding of probable cause. "[T]he mere lapse of substantial amounts of time is not controlling in a question of staleness." *Id.* at 1369 (quotation omitted). Rather, staleness is evaluated "in light of the particular facts of the case and the nature of the criminal activity and property sought." *Id.* (quotation omitted).

In *United States v. Vaandering,* 50 F.3d 696, 700 (9th Cir.1995), we concluded that information as old as twenty-two months was not stale when considered in light of other more recent information in the affidavit. Here, more recent information in the affidavit established Collins' continued, unlawful possession of firearms. The tip provided by the acquaintance placed illegal firearms in Collins' home within six weeks of the search. This tip updated the older information regarding Collins' possession of firearms in 1993. In light of this information, it was not unreasonable for the magistrate to conclude there was a fair probability that firearms would be found at Collins' residence. *See United States v. Singer,* 943 F.2d 758, 763 (7th Cir.1991) (upholding no-knock entry based upon six month old report that defendant had a handgun, reasoning that "firearms, unlike drugs, are durable goods useful to their owners for long periods of time."). *See also United States v. Batchelder,* 824 F.2d 563, 564–65 (7th Cir.1987) (nine month

old information that defendant purchased illegal silencer parts for pistol is not stale); *United States v. Miles,* 772 F.2d 613, 616 (10th Cir.1985) (two-and-a-half week old information regarding defendant's possession of stolen firearms is not stale).

### 3. *Entrapment Defense*

█ "The entrapment by estoppel defense applies when an authorized government official tells the defendant that certain conduct is legal and the defendant believes the official." *United States v. Brebner,* 951 F.2d 1017, 1024 (9th Cir.1991). Collins claims that, based on a discussion with a Montana state employee, he believed his right to possess firearms had been restored, and that he therefore was entitled to a jury instruction on entrapment by estoppel.

Collins' reliance on statements of a state employee, however, does not entitle him to raise this defense. Rather, he must demonstrate that he relied either on "a federal government official empowered to render the claimed erroneous advice, or on an authorized agent of the federal government, who ... has been granted the authority from the federal government to render such advice." *Id.* at 1027. Collins has not shown that the Montana state employee was an authorized agent of the federal government. Consequently, the district court did not err by declining to give the requested instruction.

### 4. *Sufficiency of the Evidence*

█ Collins challenges the sufficiency of the evidence supporting his conviction on three counts of being a fugitive from justice in possession of firearms, in violation of 18 U.S.C. § 922(g)(2). One count was based upon his possession of firearms on June 25, 1993. The other counts were based upon his possession of firearms and ammunition on February 25, 1994. The indictment alleged that on both days, Collins was the subject of two arrest warrants issued in Illinois. At trial, however, the government relied only upon the outstanding misdemeanor warrant, after learning that the other warrant was issued for a different Tony Collins.

Collins claims that the evidence was insufficient to establish that the misdemeanor warrant was outstanding on June 25, 1993. Officer Monney testified that the warrant was issued in May 1991, and remained outstanding until February 1994, when Collins was arrested pursuant to that warrant. Collins argues that a docket entry of "disposition completed," which could not be explained by Officer Monney, renders the evidence insufficient. Collins also points to Officer Monney's testimony that it is possible for warrants to be recalled and reissued, arguing that there was no proof that the warrant was outstanding on June 25, 1993. We disagree. When viewed in the light most favorable to the government, the evidence would permit a rational trier of fact to find that the warrant was outstanding, notwithstanding the "disposition completed" remark, and the possibility that the warrant could have been recalled. *See United States v. Lennick,* 18 F.3d 814, 818 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 162, 130 L.Ed.2d 100 (1994).

█ Collins also contends that he was not a "fugitive from justice" on February 25, 1994, because prior to that date he had voluntarily returned to Illinois. "Fugitive from justice" is defined as "any person who has fled from any State to avoid prosecution for a crime or to avoid giving testimony in any criminal proceeding." 18 U.S.C. § 921(a)(15). Collins does not challenge the government's proof that he once "fled" by departing Illinois with the intent to avoid prosecution. *See United States v. Durcan,* 539 F.2d 29, 31 (9th Cir.1976) (section 921(a)(15) requires flight with intent to avoid arrest or prosecution). Thus, we consider whether a person who has fled a jurisdiction remains a fugitive for purposes of § 921(a)(15) when he returns to the jurisdiction but continues to conceal himself from authorities.

We noted in *Durcan* that "[t]he statute provides that *flight* in some circumstances is the crime, *not* failure to surrender." *Id.* at 32 (emphasis in original). This statement provides some surface support for Collins' argument. Unlike Collins, however, the defendant in *Durcan* did not return to the jurisdiction from which he fled and then continue to hide. Rather, Durcan left Florida for Canada before he learned of a warrant for his arrest, and upon learning of the warrant and returning to the United States,

failed to turn himself in to authorities. We held that under such circumstances the government failed to prove that Durcan fled Florida with intent to avoid prosecution. *Id.* at 31–32. In contrast, the question in this case is not whether Collins departed Illinois with the intent to avoid prosecution, but whether his fugitive status ended upon his return.

We can discern no logical distinction between a fugitive who remains outside the jurisdiction, and one who eventually returns but continues to conceal himself within the jurisdiction. Because Collins took affirmative steps to avoid arrest and prosecution even after he returned to Illinois, we conclude that he was a fugitive for purposes of 18 U.S.C. §§ 921(a)(15) and 922(g)(2). *Cf. United States v. Wazney,* 529 F.2d 1287, 1289 (9th Cir.1976) (holding that defendant was "fleeing from justice" under 18 U.S.C. § 3290 even though not physically absent from the jurisdiction, because "in modern large and heavily populated districts it is almost as easy to avoid arrest or prosecution by concealing oneself within the district."); *United States v. Fowlie,* 24 F.3d 1070, 1072 (9th Cir.1994) (relying on *Wazney* in holding that defendant was "fleeing from justice" when he took "affirmative stops to avoid arrest and prosecution" by moving to a small community in Mexico even though he did not go out of his way to conceal his presence there), *cert. denied,* — U.S. —, 115 S.Ct. 742, 130 L.Ed.2d 643 (1995).

*5. Acceptance of Responsibility*

■■■ Collins contends that he is entitled to a two level adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 (1993). The district court did not clearly err in finding that Collins did not demonstrate that his was a "rare situation[ ] . . . [in which] a defendant goes to trial to assert and preserve issues that do not relate to factual guilt." § 3E1.1, comment. (n. 2). We affirm

the district court's finding that Collins did not accept responsibility.

**AFFIRMED.**