**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Danny Lynn QUALLS, Defendant–
Appellant.**

No. 95–50378.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted En
Banc Nov. 20, 1997.

Decided April 2, 1998.

Vernon C. Jolley, Riverside, CA, for Defendant–Appellant.

Ronald Cheng, Assistant United States Attorney, Los Angeles, CA, for Plaintiff–Appellee.

Before: HUG, Chief Judge, BROWNING, FLETCHER, PREGERSON, HALL, THOMPSON, TROTT, T.G. NELSON, KLEINFELD, HAWKINS and THOMAS, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

We granted en banc review in this appeal to determine whether our prior decision in *United States v. Dahms,* 938 F.2d 131 (9th Cir.1991), should be overturned.[1] *Dahms* looks to state law to determine the scope of restrictions on firearms possession under federal statutes governing the possession of firearms by previously convicted felons. The question typically arises when a previously convicted felon is granted a restoration of civil rights by state authorities including a partial restoration of the right to possess firearms.

Other circuits have adopted an "all or nothing" approach, holding that unless a state grants a complete restoration of the right to possess all firearms, the individual remains subject to federal prosecution as a felon in possession—even for a firearm that the former felon has an express right to possess under state law. *See United States v. Estrella,* 104 F.3d 3, 7–9 (1st Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 2494, 138 L.Ed.2d 1001 (1997);[2] *United States v. Burns,* 934 F.2d 1157, 1160 (10th Cir.1991); *United States v. Driscoll,* 970 F.2d 1472, 1480 (6th Cir.1992); *accord, United States v. Lee,* 72 F.3d 55, 57–58 (7th Cir.1995) (absent full restoration of firearms rights, civil rights not restored at all); *United States v. Ellis,* 949 F.2d 952, 955 (8th Cir.1991) (same).

We respectfully disagree with our sister circuits. We believe the language of the statute evidences at least an ambiguity which must be resolved in Qualls' favor and more likely an intent to defer to state law concerning the nature of the restoration of a former felon's civil rights (including the right to possess firearms).

I.

Congress has made it a federal crime for a previously convicted felon to possess a firearm. Under what has become known as the felon-in-possession statute:

---

1. To the extent not inconsistent with this opinion, we adopt the facts as set forth in the panel opinion. *See United States v. Qualls,* 108 F.3d 1019 (9th Cir.1997).

2. The Supreme Court recently granted certiorari in *United States v. Caron,* Nos. 96–2338 and 96–2339, unpubl. order (1st Cir. May 9, 1997), *cert. granted, Caron v. United States,* —— U.S. ——, 118 S.Ct. 680, 139 L.Ed.2d 628 (1998). In *Caron,* the First Circuit relied on the "all or nothing" rule of *Estrella,* which holds that a conviction counts for purposes of § 921(a)(20) if the state continues to restrict significantly a prior felon's firearm use, to reverse the district court's determination in *United States v. Caron,* 941 F.Supp. 238 (D.Mass. 1996). The district court held that a prior conviction did not count as a predicate crime under 18 U.S.C. § 921(a)(20) for a previously convicted felon who was found in possession of rifles and shotguns. Massachusetts law gave him the right to possess, transport and ship rifles and shotguns, but not to carry handguns outside his home or business. *See id.* at 246–56.

It shall be unlawful for any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce, any firearm....

18 U.S.C. § 922(g)(1).

Congress has provided an exception in section 921(a)(20) to the prohibition which is at the heart of the issue before us:

What constitutes a conviction [of a felony] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction ... for which a person ... has had civil rights restored shall not be considered a conviction for purposes of this chapter, *unless such ... restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.*

18 U.S.C. § 921(a)(20) (emphasis added).

It is not uncommon, particularly in this region, for a state to restore some civil rights—such as the right to vote—to a person with a prior felony conviction while, at the same time, partially restoring the right to possess firearms (for example allowing hunting rifles but not pistols or other concealable firearms). Restoration normally occurs upon a successful petition or application of the felon, but it also may occur, as it did here, by operation of law.[3]

In *Dahms,* we determined that a state's classification of a crime, as well as its determination of the scope of the restoration of a prior felon's civil rights, must be accorded deference. See *Dahms,* 938 F.2d at 133; *see also* 18 U.S.C. § 921(a)(20). We therefore held that the prohibition of section 922(g)(1) does not apply to a former felon who possesses a firearm which is allowed to him by state law, even though the state restricted his possession of another type of firearm. See *Dahms,* 938 F.2d at 134. In so deciding, this court deferred to state law's determination of the scope of the restoration of a prior felon's civil rights.[4]

After careful examination of our prior case law and the rationale of the decisions of our sister circuits, we reiterate our conclusion in *Dahms:* "To apply § 922(g)(1) and conclude that [a prior felon's] right to possess any firearm [is] restricted under federal law because the state restricted his possession of [one type of firearm] would undermine the explicit deference to state law in § 921(a)(20)." *Id.* at 135.

Our reading of the statutes at issue suggests that Congress did not intend this deference to state law to be either incomplete or selective. Contrary to the reasoning of those courts that have adopted an all-or-nothing approach, the exception does not provide for a resort to federal law if state law in any way limits the prior felon's possession of firearms. While at least one court has justified this as a response to the felon's failure to overcome the presumption of a federal ban on possession of firearms,[5] we view it as running contrary to a rather clear Congressional intent to defer to state law.

We reach our conclusion by examining "the language of the governing statute, guided not by 'a single sentence or member of a sentence, but look[ing] to the provisions of the whole law, and to its object and policy.'" *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank,* 510 U.S. 86, 94–95, 114 S.Ct. 517, 523, 126 L.Ed.2d 524 (1993) (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987) (listing citations)).

Congress's intent to rely on state law is apparent from the exception in section

---

3. Defendant Danny Qualls ("Qualls") was convicted in 1975 for assault with a deadly weapon and sentenced to a period of probation which was suspended and later abated upon payment of probation costs. See *Qualls,* 108 F.3d at 1021. Both sides agree, for the purposes of this appeal, that this is the functional equivalent of Qualls having applied for and received a restoration of his civil rights, including the right to possess firearms not capable of being concealed on his person.

4. Qualls was found in possession of several firearms, including those permitted by California law and those not so permitted. In the proceedings below, the issue was submitted to the trial jury in a manner that did not require jurors to identify which firearms Qualls possessed. See *Qualls,* 108 F.3d at 1024.

5. See *Driscoll,* 970 F.2d at 1480.

921(a)(20). In crafting the exception, it is clear that Congress understood that reliance on state law could produce different outcomes in different states and was aware of the divergent results that could result from application of the exception in determining what constitutes a conviction.[6] Congress nevertheless determined that deferral to state law was appropriate. There is no suggestion that Congress intended that the deference to state law be selective, allowing varying state interpretations as to what constitutes a felony conviction, while ignoring individual state determinations concerning the restoration of a former felon's civil rights.

The statute expressly states that "the law of the jurisdiction in which the proceedings were held," California state law in this case, determines what constitutes a conviction for purposes of the federal prohibition. 18 U.S.C. § 921(a)(20). The statute goes on to say that a past conviction must not be considered if the person's civil rights were restored, unless "such" restoration "expressly provides" for certain restrictions on firearms. The word "such" tells us "what to read to look for qualifications on a felon's restoration of civil rights." *United States v. Herron,* 45 F.3d 340, 342 (9th Cir.1995). We are to look to the state certificate if there is one, and to state law if the restoration is by operation of law. *See id.* The reason we look to state law is that Congress, by using the word "such," referred the courts to the restoration of civil rights, and that restoration is accomplished by the states, not the federal government.

We believe Senator Hatch expressed Congressional sentiment in his statement:

> [The exception in section 921(a)(20)] grants authority to the ... *(State) which prosecuted the individual to determine eligibility* for firearm possession after a felony conviction.... Since the Federal prohibition is triggered by the States' conviction, *the States' law as to what disqual-*

*ifies an individual from firearms use should govern.*

131 Cong. Rec. S8686–01 (daily ed. June 24, 1985) (statement of Sen. Hatch) (emphasis added).[7] To say that this statement demonstrates merely an intent to defer to state law only if it defines the lawful possession of firearms in a certain way slices the issue far too thin. Such an argument, if accepted, would substitute a federal presumption for the states' own determinations of firearm eligibility when the statute says just the opposite.

We believe Congress meant what it said with the statement that "[s]tates' law as to what disqualifies an individual from firearms use should govern." Congress easily could have mandated resort to the federal ban on possession of firearms if state law in any way limited former felons' possession. We do not take lightly its policy determination, particularly one made in the face of arguments by federal agencies that this would result in the Balkanization of felon-in-possession enforcement. By striking the balance it did, Congress implicitly recognized that what may make sense in the wilds of Alaska might not on the streets of New York. In any event, we decline to write something into the statute which Congress has made a deliberate policy decision to leave out. We are statute construers, not statute writers.

■ Finally, we are not free to read into the statute an intent to displace state law whenever a state allows a former felon to possess one type of firearm but not another. To do so would squarely contradict the rule that Congress must be "reasonably explicit" in its intent to impinge upon important state interests. *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 544, 114 S.Ct. 1757, 1764–65, 128 L.Ed.2d 556 (1994) (quoting F. Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L.Rev. 527, 539–40 (1947), and citing *Kelly v. Robinson,* 479 U.S.

---

6. *See, e.g.,* H.R.Rep. No. 99–495, at 1342 (1986), Letter from Director of Treasury, Bureau of Alcohol, Tobacco and Firearms (warning Congress that "The bill provides that what constitutes a felony conviction would be determined by the law of the jurisdiction where the conviction occurred. This would require the Bureau to examine the peculiar laws of each State to determine

whether a person is convicted for Federal purposes.").

7. Senator Hatch introduced the bill, along with Senators McClure, Symms, Denton and Thurmond.

36, 49–50 n. 11, 107 S.Ct. 353, 360–61 n. 11, 93 L.Ed.2d 216 (1986)).[8]

Without doubt, a state's interest in determining the scope of permissible firearm possession by persons convicted in its courts is an important one. Application of an all-or-nothing approach not only intrudes upon that interest, but also acts to substitute a federal definition of lawful firearm possession for that of the state. This is precisely the uniform prosecutive standard that federal agencies sought when this statute was enacted and exactly what Congress elected not to provide.

## II.

 Even if we were to read the language and policy of the exception in section 921(a)(20) as ambiguous, the Rule of Lenity[9] would mandate that we construe the exception as requiring that we defer to state law's determination of the scope of the restoration of a prior felon's civil rights. The Rule instructs that when construing an ambiguous criminal statute, courts must "infer the rationale most favorable to the [defendants]...." *United States v. Martinez*, 946 F.2d 100, 102

8. *See also City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 633, 93 S.Ct. 1854, 1859, 36 L.Ed.2d 547 (1973) ("[W]e start with the assumption that the historic police powers of the States [a]re not to be superseded by [a federal statute] unless that was the clear and manifest purpose of Congress.") (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). .

9. The rule is to be resorted to only when "there is a grievous ambiguity or uncertainty in the language and structure of [a statute], such that even after a court has seized everything from which aid can be derived, it is still left with an ambiguous statute." *Chapman v. United States*, 500 U.S. 453, 463, 111 S.Ct. 1919, 1926, 114 L.Ed.2d 524 (1991) (internal quotations, citations and alterations omitted).

10. Although our prior opinion in *Qualls* stated that plain error review was appropriate because Qualls had not objected to the proposed jury instructions, *see Qualls*, 108 F.3d at 1024, careful review of the record reveals that he did, in fact, object:

> Court: Let me start with the jury instruction first and find out from defendant if there was any objection to the government's proposed instructions....

(9th Cir.1991); *accord Liparota v. United States*, 471 U.S. 419, 427, 105 S.Ct. 2084, 2089, 85 L.Ed.2d 434 (1985).

Applying the Rule to section 921(a)(20) compels the conclusion that the exception's deference to state law is complete and that state law controls the scope of restoration of civil rights, including which firearms a former felon may possess. To interpret the statute in any other manner would subject persons to the federal ban against possession of firearms in a state which has authorized the possession of the very type of firearm for which prosecution is sought. This Rule operates with particular force here where Qualls could not only reasonably rely on state law as to which firearms he might lawfully possess, but also the interpretative law of the federal circuit (*Dahms*) where the firearm was possessed.

## III.

 Because the district court denied Qualls' request for a jury instruction limiting the firearms to be considered to those which California law prohibited him from possessing,[10] our review is de novo.[11] *See United*

> Defendant's Attorney: The Instruction ... doesn't ... accurately reflect the law.
>
> ....
>
> *U.S. v. Dahm* [sic] ... would cause California's law to become controlling in this federal trial. And California's law ... is that a person can ... earn himself a misdemeanor after satisfactory probation; judgment is withheld for that purpose. And if for some reason the misdemeanor isn't earned and that's not granted, all civil rights are returned in California at the termination of probation except the right to own or possess a concealable weapon. Long guns can be possessed in California and would supersede the government code.
>
> That is not reflected in the instruction and is contrary to that. It only reflects the federal rule, which is outdated in California due to the *Dahms* case.
>
> ....
>
> Government: [T]he defense counsel gave us a copy of his proposed instruction[ ] ... [which] I believe ... is a concealable weapon instruction on his part. And if that's what it is, I object to that.
>
> ....
>
> Defendant's Attorney: [A]ll of my client's rights were restored, including the right to possess guns but not concealable weapons.
>
> That's why, in the alternative, I have placed ... those two instructions before the Court.

*States v. Eshkol,* 108 F.3d 1025, 1028 (9th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 120, 139 L.Ed.2d 71 (1997) ("We review de novo a denial of a defendant's jury instruction based on a question of law.").

■ We examine the scope of a former felon's right to possess firearms by reference to the state law at the time his civil rights were restored, without regard to a later restriction or expansion of the defendant's civil rights. *See United States v. Collins,* 61 F.3d 1379, 1382 (9th Cir.1995). We agree with the panel's determination, *see United States v. Qualls,* 108 F.3d 1019, 1023 (9th Cir.1997), that because the scope of Qualls' civil rights was determined by the statutes under which he was convicted and those rights were never impaired, we look to the state law at the time of his conviction because it is analogous to the time of restoration. At the time of his conviction in 1975, California law prohibited Qualls from possessing pistols, revolvers, and other concealable weapons, but allowed the possession of long guns. *See* Cal.Penal Code § 12021(a). Qualls' 1994 indictment charged him with one count of being a felon in possession of the following seven firearms: two revolvers, one pistol and four rifles. The jury was required to find that Qualls possessed at least one of these firearms, and jury unanimity was required as to which firearm(s) Qualls possessed; however, the jury was not required to specify which firearm(s) it found Qualls possessed. The jury ultimately found Qualls guilty of being a former felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and he was sentenced to forty-one months imprisonment.

> One defining what a concealable firearm is, and the other one modifying the ... proposed Instruction 16, so that it would fit that definition.
>
> In an Order dated January 18, 1995, the district court denied defendant's proposed version of the government's proposed instruction 16 regarding the essential elements of the offense charged and denied defendant's proposed supplementary jury instruction.

11. The Supreme Court's recent decision in *Johnson v. United States,* —— U.S. ——, ——, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997), is inapplicable. In *Johnson,* the Court explained that a "plain error" affecting substantial rights can be corrected by an appellate court when there was no objection to the error at trial.

As did the panel, we hold that the district court erred in failing to instruct the jury that Qualls could only be convicted for possessing concealable weapons as prohibited in Cal.Penal Code § 12001(a). Because the jury was not given the opportunity to identify which weapon(s) it found Qualls possessed, we cannot determine whether the jury found Qualls guilty of possessing a concealable weapon or some other weapon. If the jury found that Qualls possessed a non-concealable weapon and convicted him on that ground, his conviction was improper because, as a matter of law, the jury was not permitted to convict him on that basis.[12] *Cf. United States v. Barona,* 56 F.3d 1087, 1097 (9th Cir.1995), *cert. denied,* 516 U.S. 1092, 116 S.Ct. 814, 133 L.Ed.2d 759 (1996) ("The problem in this case ... is that, among the list of people who the jury was told that it could choose, there existed individuals that the jury was not allowed to choose as a matter of law.").

■ As we explained in *Barona,* the Supreme Court has determined that a verdict must be set aside in cases such as this where the verdict is legally insupportable on one ground, yet supportable on another, and it is impossible to tell on which ground the jury relied. *See id.* at 1097–98 (relying on *Yates v. United States,* 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), and the Supreme Court's interpretation of *Yates* in *Griffin v. United States,* 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991)). It is impossible to determine whether the jury convicted Qualls of the possession of a weapon he had a perfect right to possess in California.

Because Qualls objected to the trial court's jury instruction error, plain error analysis does not apply.

12. Qualls' civil rights were restored by operation of law, and the law provided that he could possess long guns. For him to be convicted of feloniously possessing guns under federal law after his restoration, the state would have had to tell him "point blank that weapons are not kosher." *United States v. Erwin,* 902 F.2d 510, 512–13 (7th Cir.1990). Qualls was told by the state law that concealable guns were not kosher but long guns were, so he was entitled to a jury instruction that would allow the jury to convict him only if it concluded that he possessed the handguns charged.

■ We are unable to engage in a harmless error analysis in this case because "it would be virtually impossible to determine whether the [trial court error] was harmless enough to warrant affirming the conviction." *United States v. Annigoni*, 96 F.3d 1132, 1144 (9th Cir.1996) (en banc). *See generally United States v. Bauer*, 132 F.3d 504, 510 (9th Cir.1997) (holding that where error is nonconstitutional, the Government must show that the resulting prejudice "was more probably than not harmless," i.e., the Government must show "a 'fair assurance' that the verdict was not substantially swayed by the error"). Because we can only speculate whether the improper denial of the defendant's proposed jury instructions caused a prejudicial error or was merely harmless, harmless error review is inapplicable. *See Annigoni*, 96 F.3d at 1144–45.

The verdict and resulting judgment of conviction must be set aside.

REVERSED.

HALL, Circuit Judge, with whom THOMPSON, TROTT, and KLEINFELD, Circuit Judges, join, concurring in judgment.

Because *Dahms* contradicts the plain language of the federal felon-in-possession statute, 18 U.S.C. § 922(g)(1), I cannot join the majority's opinion.

**I**

The federal felon-in-possession statute makes it unlawful for

> any person … who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year … [to] possess in or affecting commerce, *any* firearm or ammunition; or to receive *any* firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1) (emphasis added). The phrase "crime punishable by imprisonment for a term exceeding one year" is a term of art defined in reference to state law in § 921(a)(20). That section excepts from the definition

> [a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored … unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20).

We thus start with the proposition that a felon in possession of a firearm violates the federal felon-in-possession statute. Section 921(a)(20)'s definition of a "crime punishable by imprisonment for a term exceeding one year" excepts from § 922(g)(1)'s prohibition any felon whose civil rights have been restored by the state of conviction, provided that the state does not restrict the felon's right to possess firearms. If the state maintains any restriction on firearms possession, the § 921(a)(20) exception does not apply, and the prior felony conviction is cognizable under § 922(g)(1).

This analysis is easily applied to Qualls. In 1975, Qualls was convicted in California for assault with a deadly weapon, a felony. Although Qualls retained his civil rights, the state expressly prohibited him from possessing "a pistol, revolver, or other firearm capable of being concealed upon the person." Cal.Penal Code § 12021(a) (1983). Qualls' 1975 conviction was thus cognizable under the federal felon-in-possession statute, and § 922(g)(1) prohibited him from possessing "any firearm." In 1994, Qualls was found in possession of several firearms, including two revolvers, a pistol, and three rifles. Qualls was properly tried and convicted under § 922(g)(1).[1]

**II**

The straightforward application of § 922(g)(1) is hampered only by our decision in *United States v. Dahms*, 938 F.2d 131 (9th Cir.1991). In *Dahms*, we held that state law determines both the admissibility of a prior state conviction as a predicate offense under § 922(g)(1) *and* the scope of the federal prohibition on firearms possession. *Id.* at 134–

---

1. There is no dispute that the federal definition of "firearm," as set forth in § 921(a)(3), covers all

of the weapons Qualls was charged with possessing.

35. Thus, Qualls could have been convicted under § 922(g)(1) if he possessed the pistol or revolvers, but not if he possessed just the rifles. Because the jury charge required the jurors to find only that Qualls possessed any one of the weapons charged in the indictment, *Dahms* requires reversal of Qualls' conviction. *Dahms*, however, misinterprets the federal felon-in-possession statute and should be overruled.

The First, Sixth, and Tenth Circuits have properly rejected *Dahms'* second holding—that state law determines the scope of the federal firearms prohibition. *See United States v. Estrella*, 104 F.3d 3, 8 (1st Cir.), cert. denied, — U.S. ——, 117 S.Ct. 2494, 138 L.Ed.2d 1001 (1997); *United States v. Driscoll*, 970 F.2d 1472, 1480–81 (6th Cir. 1992), cert. denied, 506 U.S. 1083, 113 S.Ct. 1056, 122 L.Ed.2d 362 (1993); *United States v. Burns*, 934 F.2d 1157, 1159–60 (10th Cir. 1991), cert. denied, 502 U.S. 1124, 112 S.Ct. 1246, 117 L.Ed.2d 478 (1992); *see also United States v. Palazzi*, 115 F.3d 906, 908 (11th Cir.1997) (citing *Estrella* with approval). According to these circuits, so long as state law prohibits a felon's possession of any firearm, § 922(g)(1) prohibits that felon's possession of every firearm.[2]

The "all or nothing" approach of our sister circuits makes considerably more sense than *Dahms* as a simple matter of statutory construction. The plain language of § 922(g) prohibits eight classes of persons from possessing "any firearm." Section 921(a)(20) directs courts to look to state law only to determine whether a person falls within the first class of persons covered by § 922(g), i.e., whether he "has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year." § 922(g)(1). That Qualls had a prior felony conviction under California law and that California had not fully restored Qualls' right to possess firearms forms both the beginning and end of the state law inquiry. Because Qualls had been convicted of a "crime punishable by imprisonment for a term exceeding one year," § 922(g)(1) barred him from possessing any firearm.

As in *Dahms*, the majority would define a "crime punishable by imprisonment for a term exceeding one year" differently depending on the particular firearm a felon was charged with possessing.[3] Whatever appeal this approach might hold if we were drafting the statute, it cannot be reconciled with the plain language of § 922(g)(1). Following through on the majority's reasoning, if state law prohibited a felon from possessing a pistol and the felon were later found possessing a pistol, the prior felony conviction would qualify as a "crime punishable by imprisonment for a term exceeding one year." Section 922(g)(1) would then prohibit the felon from possessing "any firearm." Yet, "any firearm" cannot not possibly mean *any firearm* under the majority opinion, for the majority holds that § 922(g)(1) permits the same felon to possess a rifle. The statute is not ambiguous; the majority's reading is simply implausible.

Because the federal felon-in-possession statute is unambiguous, the majority is not justified in resorting to legislative history to divine congressional intent. *See United States v. Albertini*, 472 U.S. 675, 680, 105 S.Ct. 2897, 2902, 86 L.Ed.2d 536 (1985) ("Courts in applying criminal laws generally must follow the plain and unambiguous meaning of the statutory language. '[O]nly the most extraordinary showing of contrary intentions' in the legislative history will justify a departure from that language.") (quoting *Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984)) (citations omitted). Even the legislative history the majority does identify is at best ambiguous about how much deference should be paid to state law under § 922(g)(1). Senator Hatch's statement that state law should determine eligibility for firearms possession

---

**2.** The Seventh and Eighth Circuits have reached a similar result under somewhat different reasoning. These circuits have held that a felon's civil rights have not been "restored" for purposes of § 921(a)(20) so long as the state law in any way restricts firearms possession. *See United States v. Lee*, 72 F.3d 55, 57–58 (7th Cir.1995);

*United States v. Ellis*, 949 F.2d 952, 953 (8th Cir.1991).

**3.** The Fourth Circuit has adopted a similar interpretation of § 921(a)(20). *See United States v. Tomlinson*, 67 F.3d 508, 513 (4th Cir.1995).

could mean that the § 922(g)(1) prohibition on firearms possession is no broader than the state prohibition, or it could mean simply that where the state permits *unrestricted* firearms possession, the federal statute will as well. In essence, the majority applies the rule of lenity to interpret an ambiguous legislative history where the statute itself is clear.

No one questions that the federal felon-in-possession statute accords some deference to state law. Where a state restores a felon's civil rights and lifts all restrictions on firearms possession, the prior felony conviction is no longer cognizable under § 922(g)(1). The majority, however, carries deference to state law well beyond the statutory framework and, in so doing, contradicts the plain language of the statute.

### III

The error in the majority's approach becomes all the more clear when one considers that, at the time of his arrest and conviction in 1994, even California law prohibited Qualls from possessing every firearm he was charged with possessing in violation of § 922(g)(1). California amended its own felon-in-possession statute in 1989 to prohibit felons from possessing "any firearm." Cal.Penal Code § 12021. This total ban applies even to felony convictions that pre-date the January 1, 1990, effective date of the 1989 amendment. *See People v. Mills,* 6 Cal.App.4th 1278, 8 Cal.Rptr.2d 310, 316 (1992).[4] If California itself prohibited Qualls from possessing *any firearm,* it is difficult to see how federal law pays deference to state law by allowing Qualls to possess rifles. Yet, this is exactly where the majority opinion leaves us.

This curious result is not without support in the law of our circuit. Applying *Dahms,* we have held that the federal firearms prohibition can be no broader than the state prohibition *at the time a felon's civil rights were restored. See United States v. Cardwell,* 967 F.2d 1349, 1350–51 (9th Cir.1992). It may be sensible to look to state law at this time to determine whether the state imposes *any* firearms restriction, and thus whether § 922(g)(1) even applies. Where the state never fully restores a felon's right to possess firearms, however, it is not sensible to ignore subsequent changes in the scope of the state law restriction. The majority's holding that federal law allows Qualls to possess firearms that California itself does not furthers neither the goals of the federal felon-in-possession statute nor the majority's supposed deference to state law.

Adoption of the "all or nothing" approach would, of course, do away with attention to the exact scope of the state prohibition altogether. I nonetheless find it telling that the majority would, under the guise of deference to state law, permit Qualls to possess a firearm under § 922(g)(1) when California declares his possession of the very same firearm a felony.

### IV

No matter what our holding today, Qualls will benefit from our misinterpretation of the federal felon-in-possession statute to date. Even if we were to adopt the "all or nothing" approach of our sister circuits, due process would block us from applying this correct reading of the statute retrospectively to Qualls. *See United States v. Ruiz,* 935 F.2d 1033, 1035–36 (9th Cir.1991) (holding that due process can act like ex post facto clause in judicial context).

Qualls' good fortune notwithstanding, the plain language of § 922(g)(1) should direct the law of this circuit from this point forward. Insofar as *Dahms* holds that state law dictates the scope of the federal firearms prohibition under § 922(g)(1), the case should today be overruled.

---

**4.** Applying the expanded prohibition to Qualls would present no ex post facto problem. *See United States v. Huss,* 7 F.3d 1444, 1446–48 (9th Cir.1993) (holding that 1990 Oregon law that

expanded felon-in-possession statute to prohibit possession of long guns did not constitute punishment as applied to prior felony convictions).